The plaintiff, Patricia K. Caulfield,[3] appeals from a Superior Court summary judgment dismissing her malpractice claim against her former attorney, defendant John T. Martin. The motion judge ruled, on Martin's summary judgment motion, that Caulfield had no reasonable expectation of proving that Martin's conduct, although concededly negligent, proximately caused her any actual loss. We agree and affirm.
Background. The following facts are undisputed. Caulfield owned a home in Concord, financed by a mortgage to Washington Mutual Bank. That bank was subsequently placed in Federal Deposit Insurance Corporation (FDIC) receivership, and its assets were purchased by J.P. Morgan Chase Bank, N.A. (Chase). As of early 2009, Caulfield could no longer afford the monthly mortgage payments. Caulfield and Chase entered into a mortgage modification trial plan agreement in August, 2009, referred to by the acronym "TPP," but Chase refused to agree to a permanent modification and sent Caulfield a notice of foreclosure in 2010.
Caulfield retained Martin, who in 2012 filed in her name a Superior Court complaint against Chase (the 2012 action) for damages and injunctive relief. The 2012 action asserted five claims: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of G. L. c. 93A, lack of statutory authority to foreclose, and intentional infliction of emotional distress. Chase removed the action to Federal court, after which Martin, as Caulfield's attorney, negligently failed to respond to discovery and various court orders, causing the action to be dismissed with prejudice in late 2013.
In 2014, Chase sent Caulfield another notice of foreclosure, prompting Caulfield, represented by different counsel, to file a second action against Chase (the 2014 action), this time directly in Federal court. The 2014 action asserted various State statutory claims challenging Chase's right to foreclose. A Federal judge dismissed the complaint for failure to state a claim upon which relief could be granted. Caulfield appealed but, while the appeal was pending, entered into a settlement agreement under which Chase accepted a "short payoff" of Caulfield's loan in the amount of $700,000, and paid Caulfield $2,500. Caulfield later sold the property for $800,000.
Caulfield then filed this malpractice action against Martin. She alleged that the 2012 action asserted meritorious claims, on which she should have prevailed and obtained damages, but that it was dismissed with prejudice due to Martin's negligence. As a result, she alleged, her 2014 action against Chase could assert only certain limited claims, which she was forced to settle for less than the actual damages originally caused by Chase.
Discussion. "When asserting a claim for legal malpractice, a plaintiff bears the burden of proving that [her] attorney committed a breach of the duty to use reasonable care, that the plaintiff suffered actual loss, and that the attorney's negligence proximately caused such loss." Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 226 (1999). This requires proof that the plaintiff "probably would have obtained a better result had the attorney exercised adequate skill and care." Poly v. Moylan, 423 Mass. 141, 145 (1996). This often involves a "trial within a trial," where the underlying action is presented to the trier of fact to determine, among other things, what, if any, damages were caused by the attorney's negligence. Fishman v. Brooks, 396 Mass. 643, 647 (1986). Here, because Caulfield would bear the burden of proof at the trial within a trial, Martin could obtain summary judgment by demonstrating that Caulfield had no reasonable expectation of proving an essential element of her case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The motion judge ruled that Martin had demonstrated that Caulfield had no reasonable expectation of proving proximate cause, because, even if the 2012 action had not been dismissed due to Martin's negligence, the dismissal of the 2014 action[4] "demonstrate[d] that Caulfield would not have obtained a better result in the 2012 action."[5] We have considered the effect of the 2014 ruling on each of the five claims asserted in the 2012 action, and we agree with the motion judge.
1. Breach of contract. Caulfield claimed that Chase had breached the 2009 TPP agreement in 2010. The motion judge ruled, however, that this claim was "specifically addressed" by the dismissal, for failure to state a claim, of the count of Caulfield's 2014 action seeking a mortgage modification under G. L. c. 244, § 35B. The Federal judge had ruled that Chase had "complied with [c]hapter 244 prior to accelerating the mortgage" and no further compliance with § 35B was required.
Section 35B(b ) provides that "[a] creditor shall not cause publication of notice of a foreclosure sale ... upon certain mortgage loans unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure."[6] These steps include assessing the borrower's ability to make an affordable monthly payment and, in some circumstances, offering a loan modification. The only such steps described in Caulfield's 2014 complaint were those taken in connection with the 2009-2010 TPP process. The Federal judge's ruling that Chase had complied with § 35B necessarily embodied the judge's conclusion that Chase, through that TPP process, had taken reasonable steps and made a good faith effort to avoid foreclosure.[7]
The Federal judge's rulings had issue preclusive effect in the present action, as the motion judge concluded elsewhere in her decision. Caulfield's brief on appeal makes no argument to the contrary; she addresses only claim preclusion, not issue preclusion. Even if the 2014 judgment of dismissal were erroneous, it would have preclusive effect, absent circumstances not present here. See Morganelli v. Building Inspector of Canton, 7 Mass. App. Ct. 475, 487 (1979). The ruling that Chase, through the TPP process, had taken reasonable steps and made a good faith effort to avoid foreclosure thus made it impossible for Caulfield to prove, in this action, that the dismissal of her TPP-based breach of contract claim proximately caused her any harm.
2. Implied covenant of good faith and fair dealing. Caulfield claimed that Chase had breached the 2009 TPP agreement's implied covenant of good faith and fair dealing. Essentially for the reason just stated, the Federal judge's ruling on the § 35B claim made it impossible for Caulfield to prove, in this action, that the dismissal of her TPP-based implied covenant claim proximately caused her any harm.
3. General Laws c. 93A. Caulfield's G. L. c. 93A claim alleged three theories, the first of which was that Chase had acted deceptively in connection with the TPP loan modification. Again, the Federal judge's ruling that Chase had taken reasonable and good faith steps through the TPP process made it impossible for Caulfield to prove, in this action, the viability of her TPP-based c. 93A theory.
Caulfield's second c. 93A theory was that Chase had initiated foreclosure proceedings without being the actual holder of the note and mortgage. But the Federal judge ruled, in dismissing the 2014 action for failure to state a claim, that "[i]n the exhibits presented to the court in both this action and [the 2012] litigation regarding foreclosure, Caulfield has failed to support or even make any plausible allegations that [Chase] is not the holder of the [n]ote and mortgage ...." That ruling made it impossible for Caulfield to prove, in this action, the viability of her second c. 93A theory -- notwithstanding Caulfield's argument that the Federal judge's ruling erroneously overlooked certain evidence. See Morganelli, 7 Mass. App. Ct. at 487.
Caulfield's third c. 93A theory was that Chase was not entitled to foreclose because, in asserted violation of G. L. c. 185, § 67, it had not registered[8] any instrument showing that the mortgage had been assigned to it. But Caulfield's 2014 complaint had advanced the closely related claim that Chase was not entitled to foreclose because, in asserted violation of G. L. c. 244, § 14, it had not registered such an assignment. The Federal judge dismissed this claim, ruling that Federal law empowered the FDIC to transfer the mortgage without any assignment, thus relieving Chase of any duty to record the transfer. That ruling made it impossible for Caulfield to prove, in this action, the viability of her third c. 93A theory.
In sum, Caulfield has shown no error in the motion judge's conclusion that she had no reasonable expectation of proving that the dismissal of her c. 93A claim due to Martin's negligence proximately caused her any harm.
4. Statutory authority to foreclose. Caulfield's claim that Chase lacked the statutory authority to foreclose was based on the same asserted noncompliance with G. L. c. 185, § 67, as her third c. 93A theory. For the reasons just discussed, Caulfield had no reasonable expectation of proving that the dismissal of this claim proximately caused her any harm.
5. Intentional infliction of emotional distress. Caulfield's claim for intentional infliction of emotional distress was premised on Chase's conduct with respect to the TPP agreement and in attempting to foreclose (as Caulfield alleged) without holding the mortgage and note or registering any mortgage assignment. The Federal judge's rulings made it impossible for Caulfield to prove that any of this conduct sank to the "extreme and outrageous" level necessary to prove an intentional infliction claim. See Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Thus Caulfield could not prove that the dismissal of that claim due to Martin's negligence proximately caused her actual harm.
Conclusion. The motion judge correctly allowed summary judgment in favor of Martin.
Judgment affirmed.

The plaintiff's surname appears as "Caufield" on the Superior Court docket, but as "Caulfield" on her complaint and numerous other documents in the record. We spell the name as it appears on the complaint.

The motion judge also relied in part on the denial of a preliminary injunction in the 2012 action. As we base our decision solely on the rulings in the 2014 action, we need not determine the effect, if any, of that earlier ruling.

Martin's motion conceded causation in the sense that his negligence had caused the 2012 complaint to be dismissed; what his motion challenged was whether Caulfield could prove that the dismissal had in turn proximately caused her any damages. In this sense, in a legal malpractice action, issues of causation and damages may be "inextricably linked." Jacobs & Laurence, Professional Malpractice § 16.40 at 388 n.4 (2007 & Supp. 2017). We discuss them together herein.

Caulfield's 2014 complaint alleged that her loan fell within the category of loans subject to § 35B.

This is so notwithstanding that § 35B, having been enacted by St. 2012, c. 194, § 2, was not in effect at the time of the TPP process in 2009-2010.

The 2012 complaint alleged that Caulfield's property was registered land.